CaRUTHERS, J.,
delivered the opinion of the Court.
The defendant was indicted in the Circuit Court of Weakley, jointly with Peter Workman, for the murder of Joseph L. Timmons. The former is charged with the perpetration of the murder, and the latter as being present aiding and abetting. They were permitted to sever, and the defendant William G-. was put upon his trial. He was convicted of murder in the second degree, according to the classification of our felony act, and sentenced to twenty-one years in the penitentiary, but appeals to this Court, and assigns two errors in the proceedings against him.
1. He takes the objection by plea in abatement to the legality of the grand jury by which the indictment was found. The record shows that only thirteen of the venire appeared, and they were organized into a grand jury and sworn without the formality of drawing their names out of a box or hat by a boy under ten years old. This is required by the act of 1779, (Car. & Rich., 421,) and is yet the mode of selection where a full panel or more than thirteen of the original panel have been summoned and attend. But the act of 1817, ch. 131, *427 makes provision for a failure of tbe original panel to attend, by authorizing the Court to empanel a grand jury to consist of so many as do appear, and the residue of bystanders, and wholly of bystanders if none attend. There could be no drawing for a jury where less, or only the number required, were in attendance. It would be absurd if not ridiculous to put the thirteen names in a box and draw them all out again to constitute the jury. Many of these old forms in criminal proceedings are kept up more on account of our veneration for them than any good reason to sustain them. There was no valid objection, then, to the organization of the grand jury, and demurrer to the plea in abatement was properly sustained.
2. The wife of Peter Workman was offered as a witness by the defendant, and rejected by the Court as incompetent, upon the ground that her husband was charged in the same indictment as aiding and abetting in the murder. He was not then upon trial, and it is difficult to see upon what principle his wife could be held incompetent. The supposed complicity of her husband in the same crime might and would seriously affect her credit with the .jury, but her admissibility as a witness is settled in Moffat vs. The State, 2 Humph., 100. The wife of a co-defendant is only excluded in cases where the trial is joint, or where, though it is separate, yet the acquittal of the defendant on trial would exonerate her husband, as in cases where the guilty participation of a specified number is necessary, as riots, conspiracy, etc. To this effect is the case of Moffat; and for the reasons of the rule, and the authorities by which it is sustained, it is only necessary to refer to that case, as we are not disposed to override or reconsider it. That *428 was a misdemeanor and this a felony, hut that can make no difference in the principle — certainly none in favor of the State. If the trial were joint, the rule would he different.
The charge against Peter is that he was present aiding and abetting, which is a charge against him as principal, though in the second degree, both at common law and by the 62d section of our felony act. He may be convicted although the principal in the first degree has been acquitted. 1 Arch. Cr. Prac. and PL, Waterman’s ed., p. 18 and note 1; 1 Leach, 860; 3 Mod., 121; 3 Price, 145; 2 Shaw, 570; 2 Marsh, 465. They are both regarded in the law as equally guilty, and the distinction is regarded as so immaterial in practice, that one who is indicted as principal in the first degree — having done the act with his own hand — may be convicted if he were only present aiding and abetting. If the law were now as it was anciently, according to Poster, that the principal in the second degree could not be tried until the principal in the first degree had been convicted or outlawed, the wife of the former would be excluded as a witness, for her husband would be directly interested in preventing a conviction of the defendant on trial, as an acquittal would rescue her husband from all danger.
Whether a reversal on this point will ultimately result in any advantage to the defendant, is not for us to judge; for no matter how clear his guilt may be, or how deeply he may be stained with blood, it is our duty to see that he has the benefit of the law under which his punishment is demanded.
Judgment reversed, and a new trial granted.